IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JANEKA JORDAN, )
)
         Plaintiff, )
)
v. ) No. CIV-09-242-L
)
TABANI CROWNE OKC, L.L.C. )
d/b/a CROWNE PLAZA HOTEL, )
et al., )
)
         Defendants. )

# **O R D E R**

On March 4, 2009, plaintiff filed this action seeking damages for alleged violations of Title VII of the Civil Rights Act of 1964, as amended. She claims she was constructively discharged due to sexual harassment and that she was subjected to retaliation for complaining about the harassment. In addition to her federal claims, plaintiff asserts state law claims for negligence and violation of the public policy of the State of Oklahoma. Named as defendants are three corporate entities who owned the Crowne Plaza Hotel in Oklahoma City, Oklahoma, where plaintiff was employed. Complaint at ¶¶ 2, 6 (Doc. No. 1).

This matter is before the court on defendants' motion for summary judgment. Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party

seeking summary judgment.  In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party.  Board of Education v. Pico, 457 U.S. 853, 863 (1982).  Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out *specific* facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2) (emphasis added).  *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).  In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts, taken in the light most favorable to plaintiff, establish that plaintiff was employed as a server at the Crowne Plaza Hotel in Oklahoma City beginning in August 2008.  On the evening of January 8, 2009, Claudio Hernandez, a dishwasher at the hotel, accosted plaintiff.  In the written statement she provided to hotel management the next day, plaintiff described the incident as follows:

> I was standing at the server window . . . and next thing I knew [Hernandez] is standing behind me when I turned around he put his arm around my shoulders and said hi[.] I said hi then he grabbed me tight and grabbed my breast holding me. At this time I got out from under his arm and was telling him NO he grabbed both my hand[s] holding them tight. I was try[ing] to back toward the entrance so I could get away but he tightened his grip on my hand and started pulling me towards him saying let me touch your beautiful breast let me hold you let me touch you the whole time I was saying NO NO NO I was so scared.

Exhibit C to Defendants' Motion for Summary Judgment at 1-2. Even though plaintiff protested, Hernandez did not cease his actions and tried to quiet plaintiff. Plaintiff testified that she did not scream

> [b]ecause I was telling him no, no, and I was getting louder with it. And when he shushed me that frightened me when he was saying, Don't tell no one. And he was shushing me, and I felt that he was shushing me because my nos were getting loud.
>
> At that point I didn't know what he was going to do. I didn't know if he was going to get angry, because I was saying no already. And for him to tell me to shush, I didn't know if he was going to get mad. I didn't know what was going on in his mind. I knew I smelled alcohol on him and he had been drinking.

Deposition of Janeka Michelle Jordan at 91-92. After she got away from Hernandez, plaintiff immediately reported the assault to Terry West, the chef who was on duty that night and therefore Hernandez's supervisor. She then went to the women's room to try and compose herself, where she remained for more than 40 minutes. Shortly after plaintiff returned to the hotel restaurant, plaintiff's supervisor Kathy

Spengos arrived at the hotel. Plaintiff informed Spengos of the attack by Hernandez. Plaintiff also told Spengos that she could not work if Hernandez was also on duty and made it clear that she was "not working with him anymore." Id. at 104-5. The next morning, plaintiff called Spengos and told her she wanted to file a sexual harassment complaint against Hernandez. Because Spengos could not find the appropriate forms to use to file such a complaint, she advised plaintiff to write a statement detailing the event and to give it to the manager on duty, Josh Nicholson. Id. at 108-9; Affidavit of Kathy Spengos at ¶ 5. Plaintiff provided the statement to Nicholson later that day.

On January 12, 2009, the hotel's general manager, Jeff Keeley, met with Hernandez in his office. The human resources manager for defendants' other hotel,[1] Nadia Fernandez, participated by telephone to help translate as Hernandez's English skills were limited. Deposition of Jeffrey C. Keeley at 32; Deposition of Nadia Fernandez at 26. During this meeting, Hernandez gave conflicting accounts about the events on January 8. According to Fernandez, "He repeated several times that he didn't do anything, and then he said he didn't remember." Deposition of Nadia Fernandez at 49. At the conclusion of the meeting, Keeley issued a written warning to Hernandez. The warning noted that "Janet Jordan made a report of Claudio touching her inappropriately and also holding onto her arms so that she

---

[1] During the time period at issue in this case, the Oklahoma City hotel did not have a human resources manager.

could not get away. Alcohol was detected on Claudio by 3 people." Exhibit 22 to Plaintiff's Response to Defendants' Motion for Summary Judgment. The warning indicated that "[a]ny repeat offenses, of either incident, will result in termination." Id.

Defendants claim Keeley instructed Spengos to inform plaintiff of this action, but that plaintiff would not return Spengos's phone calls. Defendants also assert that plaintiff failed to appear for her next shift on Friday, January 16, 2009, and so Keeley assumed plaintiff was self-terminating. Plaintiff, however, claims she was in contact with Spengos, but that Spengos repeatedly told her that Spengos did not know what was being done. She asserts that no one called her to attend a meeting or talked to her about what was happening even though she worked the day after Keeley met with Hernandez. Plaintiff admits that she did not work on January 16, 2009, but claims she called in sick to Spengos and found someone to cover her shift. Deposition of Janeka Michelle Jordan at 123-24.

Shortly after plaintiff arrived for her next scheduled shift on Saturday, January 17, 2009, she discovered that Hernandez was working the same shift. Id. at 124-26. Plaintiff immediately called Spengos to ask why Hernandez was at the hotel, and Spengos told her the hotel did not fire Hernandez because he had been employed for 20 years. Id. at 126. Plaintiff was upset and told Spengos that she quit. When the chef asked her to calm down and stay until someone came to take her place, plaintiff responded:

> I said, No. I'm leaving. I said, Take my badge. Go back there and swipe me out. I'm leaving. I said, Do you not understand? I said, He violated me. He scared me, and they put him back on my shift with me. I said, I'm not working here. . . .
>
> [U]p until that day in that period I kept in touch with Kathy to find out what was going on, what was being done. Kathy kept telling me she didn't know, that she was waiting on Brandon. She was waiting on Jeff. HR never called me. Jeff never called me. Nobody ever called me to have a meeting to say this is what we're going to do about your situation. Nobody ever talked to me about anything.
>
> They put him back on the same shift as me as if nothing had happened like I was nothing, like I didn't matter, like I was nothing.

Id. at 127-28.

To survive summary judgment on her Title VII claim for sexual harassment, plaintiff must demonstrate that "a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998) (quotation omitted), *cert. denied*, 526 U.S. 1039 (1999). While plaintiff must show that the conduct in question was "both objectively and subjectively abusive",[2] she is not required to demonstrate that she suffered

---

[2] Turnbull v. Topeka State Hosp., 255 F.3d 1238, 1243 (10th Cir. 2001) (quotation omitted), *cert. denied*, 535 U.S. 970 (2002).

6

psychological harm or that her work suffered as a result of the harassment.  Penry, 155 F.3d at 1261.  In determining whether conduct amounts to sexual harassment, the court must examine the totality of the circumstances, including "the nature of the sexual advances and the context in which the alleged incidents occurred."  Meritor Sav. Bank v. Vinson, 477 U.S. 57, 69 (1986).  Moreover, "an isolated incident may suffice if the conduct is severe and threatening."  Turnbull, 255 F.3d at 1243.

Although defendants claim the attack on plaintiff was not sufficiently objectionable to constitute harassment, the court finds plaintiff has presented enough evidence to create a genuine issue of material fact on this issue.  *See* Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1072 (10th Cir. 1998).  There is evidence that Hernandez's conduct was sufficiently severe and threatening as he physically assaulted plaintiff and held her against her will.  Hernandez forced himself on plaintiff in a sexual manner even though she repeatedly told him "no."  Plaintiff testified she felt threatened by his actions, and her visceral response to his presence when she returned to work on January 17, 2009 is sufficient to demonstrate that she found his behavior subjectively abusive.  The court also finds plaintiff has presented sufficient evidence to present a jury question with respect to defendants' knowledge of Hernandez's propensities and their response to her complaint.  There is evidence that just hours before Hernandez accosted plaintiff, he had made unwelcome advances on two other female employees and, although this information was

reported immediately to management, Hernandez was not disciplined. In addition, there is evidence that management knew about other instances where Hernandez had been intoxicated on the job and at least one other incident where a female employee quit because she was uncomfortable with Hernandez's conduct. A genuine issue of material fact also surrounds what actions, if any, defendants took to prevent harassment as certain managers testified they never received sexual harassment training. Likewise, defendants' response to plaintiff's complaint is highly disputed. Defendants are therefore not entitled to summary judgment on plaintiff's sexual harassment claim under Title VII. For the same reason, defendants are not entitled to summary judgment on plaintiff's negligence claim or her claim for violation of the public policy of Oklahoma.

Defendants are, however, entitled to summary judgment on plaintiff's retaliation claim. To establish a prima facie case of retaliation, plaintiff must show that:

> (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) a causal nexus exists between her opposition and the employer's adverse action.

Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1176 (10th Cir. 2007). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by

8

adverse action." Burrus v. United Telephone Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir.), *cert. denied*, 459 U.S. 1071 (1982). If plaintiff establishes her prima facie case, the burden of production shifts to defendants to show a legitimate, non-retaliatory reason for the employment decision. EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). If defendants meet their burden of production, the burden then shifts to plaintiff who must show that defendants' proffered reason was merely pretext for retaliation. Plaintiff can establish pretext by demonstrating that either that a retaliatory motive more likely motivated defendants or that defendants' proffered reason is unworthy of credence. Plaintiff can also carry her burden by producing direct evidence of retaliation. *See* Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir. 1995).

The court finds plaintiff cannot establish a prima facie case of retaliation as she cannot demonstrate an adverse action that is due to her sexual harassment complaint. She points to her alleged constructive discharge as the adverse action in this case, but the court finds the termination of employment is part and parcel of her sexual harassment claim and not an independent basis for a retaliation claim. Defendants are therefore entitled to summary judgment in their favor on this claim.

Finally, a decision on whether plaintiff will be entitled to punitive damages must await trial. Defendants' motion for summary judgment on this issue must therefore denied.

In sum, Defendants' Motion for Summary Judgment (Doc. No. 34) is DENIED in part and GRANTED in part.

It is so ordered this 8th day of June, 2010.

*Tim Leonard*
TIM LEONARD
United States District Judge